NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SGS U.S. TESTING COMPANY, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 09-CV-6007 (DMC - JAD) |
| TAKATA CORPORATION, TK HOLDINGS, INC., TAKATA, INC., TAKATA RESTRAINT SYSTEMS, INC., TAKATA SEATBELTS, INC., TK-TAITO, LLC, JOHN DOES COMPANIES (1-50) | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by TK Holdings, Inc. ("Defendant") to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. Upon consideration of all submissions, it the decision of this Court for the reasons herein expressed that Defendant's motion to dismiss is **granted in part** and **denied in part**.

I.  **BACKGROUND**

SGS U.S. Testing Company, Inc. ("Plaintiff" or "USTC") performs testing services for the United States Highway Traffic Safety Administration and for private clients, including Defendant Takata. Takata is a global supplier of parts to major auto makers, including seatbelts, airbag systems, steering wheels, child seats and electronic systems. USTC has performed testing services for Defendant Takata since 1985. Beginning around 2002, a series of lawsuits were filed, including

class action suits, naming Takata and SGS as Defendants, alleged that the seat belts manufactured by Takata were defective and not in compliance with federal regulations.[1] In at least two separate actions, SGS was not named as a defendant, but nonetheless allegedly incurred litigation expenses as a consequence of the allegations in those complaints. With respect to the underlying proceedings naming SGS as Defendant, at least four separate indemnification and defense requests were submitted to Takata, including initial requests dated July 9, 2002 and September 27, 2002 and renewal requests dated October 22, 2007 and January 27, 2009.  Takata denied each request for indemnification and defense.

The alleged contract arises pursuant to the "Terms and Conditions" on the back of Plaintiff's order forms. In pertinent part, the "Terms and Conditions" of the 1988 order form are recited as follows:

> 7. Client understands and agrees that Laboratory in and by performing services hereunder does not assume, abridge, abrogate or undertake to discharge any duty or responsibility of Client to any other party or parties. Client agrees, in consideration of Laboratory undertaking to perform the test program hereunder, to protect, defend, indemnify, save harmless and exonerate Laboratory from any and all claims, damages, expenses either direct or consequential for injuries to persons or property arising out of or in consequence of the performance of the testing or inspections hereunder and/or

---

[1] See Exhibits attached to Defendant's Brief in support of this motion for a compilation of underlying complaints; See also Plaintiff's Complaint.
- a.  Second Amended Complaint at 1, Zavala v. Takata Corp., No. BC 277327 (Superior Court of Los Angeles County 2006);
- b.  Amended Complaint at 1, Fernandez v. United States Testing Company, Inc., No. CV2002-022227 (Ariz. Sup. Ct. 2006);
- c.  First Amended Complaint at 1, Lohman v. Takata Corp., No. D-0101-CV-200201279 (N.M. 1st Judicial Dist. Ct. 2002);
- d.  Amended Complaint at 1, Baggett v. Takata Corp., No. 3594 (Tenn. 28th Jud.Cir. 2005);
- e.  Complaint at 1, Price v. Takata Corp., No. 2:08-cv-00151-J (D.N.M. 2007);
- f.  Second Amended Original Petition-Class Action at 1, Everett v. Takata Corp., No. 157,896-A (Tex. 30th Jud. Dis.2003); and
- g.  Amended Complaint, Stevic v. Nissan Motor Company, Ltd., No. 06-CA-8631(Fl. 9th Jud. Cir. 2007).

the performance of the products tested or inspected hereunder.

In pertinent part, the "Terms and Conditions" of the 1986 order form are recited as follows:

> 7. Client understands and agrees that Laboratory in entering into this Contract and by performing services hereunder does not assume, abridge, abrogate or undertake to discharge and duty or responsibility of Client to any other party or parties. No party or entity other than Client shall have any right to rely on any Report or other representation of conduct of Laboratory, and Laboratory disclaims any obligations of any nature whatsoever with respect to such parties or entities. Client agrees, in consideration of Laboratory undertaking to perform the test program hereunder, to protect, defend, indemnify, save harmless and exonerate Laboratory from any and all claims, damages, expenses either direct or consequential for injuries to persons or property arising out of or in consequence of the performance of the testing or inspections hereunder and/or the performance of the products test or inspected hereunder.

In pertinent part, the "Terms and Conditions" of the 1995 order form are recited as follows:

> 13. Client understands and agrees that SGS USTC in entering into this Contract and by performing services hereunder does not assume, abridge, abrogate or undertake to discharge any duty or responsibility of Client to any other party or parties. No one other than Client shall have any right to rely on any Report or other representation of conduct of SGS USTC, and SGS USTC disclaims any obligations of any nature whatsoever with respect to such person. CLIENT AGREES, IN CONSIDERATION OF SGS USTC UNDERTAKING TO PERFORM THE TEST(S) OR PROGRAM HEREUNDER, TO PROTECT, DEFEND, INDEMNIFY, SAVE HARMLESS AND EXONERATE SGS USTC FROM ANY AND ALL CLAIMS, DAMAGES, EXPENSES EITHER DIRECT OR CONSEQUENTIAL FOR INJURIES TO PERSONS OR PROPERTY ARISING OUT OF OR IN CONSEQUENCE OF THE PERFORMANCE OF THE TESTING OR INSPECTIONS HEREUNDER AND/OR THE PERFORMANCE OF THE PRODUCTS TESTED OR INSPECTED HEREUNDER UNLESS CAUSED BY THE NEGLIGENCE OF USTC.
>
> 22. All costs associated with compliance with any subpoena(s) for documents, testimony in a court of law, or for any other purpose relating to work performed by SGS USTC in connection with work performed for that Client, shall be paid by Client. Costs include but are not limited to hourly personnel charges, travel and accommodations, advice of counsel and all other reasonable associated costs.

In pertinent part, the "Terms and Conditions" of the 1996 order form are recited as follows:

> 13. Client understands and agrees that SGS USTC in entering into this Contract and by performing services hereunder does not assume, abridge, abrogate or undertake to discharge any duty or responsibility of Client to any other party or parties.  No one other than Client shall have any right to rely on any Report or other representation of conduct of SGS USTC and SGS USTC disclaims any obligations of any nature whatsoever with respect to such person.  CLIENT AGREES, IN CONSIDERATION OF SGS USTC UNDERTAKING TO PERFORM THE TEST (S) OR PROGRAM HEREUNDER, TO PROTECT, DEFEND, INDEMNIFY, SAVE HARMLESS AND EXONERATE SGS USTC FROM ANY AND ALL CLAIMS, DAMAGES, EXPENSES EITHER DIRECT OR CONSEQUENTIAL FOR INJURIES TO PERSONS OR PROPERTY ARISING OUT OF OR IN CONSEQUENCE OF THE PERFORMANCE OF THE TESTING OR INSPECTIONS HEREUNDER AND/OR THE PERFORMANCE OF THE PRODUCTS TESTED OR INSPECTED HEREUNDER UNLESS CAUSED BY THE NEGLIGENCE OF USTC.

> 22. All costs associated with compliance with any subpoena (s) for documents, testimony in a court of law, or for any other purpose relating to work performed by SGS USTC in connection with work performed for that Client, shall be paid by Client.  Client shall also pay SGS USTC's then existing standard fees for consulting, deposition and trial testimony and all expenses related there to.

In pertinent part, the "Terms and Conditions" of the 2000 order form are recited as follows:

> 14. THE CLIENT SHALL GUARANTEE, HOLD HARMLESS AND INDEMNIFY THE COMPANY AND ITS OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS AGAINST ALL CLAIMS MADE BY ANY THIRD PARTY FOR LOSS, DAMAGE OR EXPENSE OF WHATSOEVER NATURE INCLUDING REASONABLE LEGAL EXPENSES AND HOWSOEVER ARISING RELATING TO THE PERFORMANCE, PURPORTED PERFORMANCE OR NON-PERFORMANCE, OR ANY SERVICES TO THE EXTENT THAT THE AGGREGATE OF ANY SUCH CLAIMS RELATING TO ANY ONE SERVICE EXCEED THE LIMIT MENTIONED IN CONDITION 10.

> 19. All costs associated with compliance with any subpoena(s) for documents, sworn testimony, or for any other purpose relating to work performed by the Company in connection with work performed for that Client, shall be paid by

> Client. Client shall also pay the Company's then exiting standard fees for consulting, deposition and trial testimony and expenses related there to.

In pertinent part, the "Terms and Conditions" of the 2003 order form are recited as follows:

> E. (b) Indemnification: Client shall guarantee, hold harmless and indemnify the Company and its officers, employees, agents or subcontractors against all claims (actual or threatened) by any third party for loss, damage or expense of whatsoever nature including all legal expenses and related costs and howsoever arising relating to the performance, purported performance or non-performance, of any services.

An identical provision exists in the 2004 order form.

Plaintiff's Complaint asserts four claims including: Count I - Contractual Indemnification; Count II - Common Law Indemnification; Count III - Breach of Good Faith and Fair Dealing; and Count IV Promissory Estoppel.

## II.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6)

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above a

speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Bell at 555-56.

   B.   Fed. R. Civ. P. 12(d)[2]

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). However, "[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consul. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993); see Kent v. Tabafunda, 2008 U.S. Dist. LEXIS 47649, *9 (D.N.J. June 19, 2008) ("[a] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'").

   C.   Fed. R. Civ. P. 12(e)

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is

---

[2] The Court takes judicial notice of the underlying contracts, given that the authenticity of each is undisputed and each is integral to Plaintiff's Complaint. The Court also considers the complaints attached as exhibits to Defendant's motion as matters of public record.

6

not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

### III.  DISCUSSION[3]

  A.  Contractual Indemnification

Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim because Defendant contends that at "no time did TK holdings agree to indemnify SGS USTC for the costs and expenses it incurred in defending itself against allegations of intentional misconduct and fraud." By contrast, Plaintiff asserts that contractual indemnification provisions obligate Defendants to indemnify Plaintiff for litigation costs incurred as a consequence of the underlying lawsuits.

"[I]ndemnification agreements warrant strict construction." Mantilla v. Nc Mall Assocs., 167 N.J. 262, 269 (2001). "[A]lthough indemnification agreements are interpreted in accordance with the rules governing contracts generally, ambiguous clauses should be construed strictly against the indemnitee." Id. at 268. "In Mantilla v. Nc Mall Assocs., 167 N.J. 262, 770 A.D. 1144 (N.J. 2001), the Court relied on *Ramos* in upholding a finding that an indemnification agreement did not cover the indemnitee's negligence, quoting with approval the Appellate Division's statement 'that there is a presumption against indemnifying an indemnitee for its own negligence that can be rebutted only by plain language clearly expressing a contrary intent.'" Darcy v. N.J. Transit Railroad Operations, Inc., No. 04-5907, 2007 U.S. Dist. LEXIS 33989, at *7 (D.N.J. May 8, 2007)**.** Ultimately, the Mantilla Court held that "absent explicit contractual language to the contrary, an indemnitee who

---

[3] Prospectively, this case involves a complex choice of law issue. However, for purposes of the instant motion, the parties have relied on New Jersey State Law as the governing substantive law. Accordingly, in the absence of arguments to the contrary and without sufficient information to render a determination concerning any conflict of law analysis, the Court will apply New Jersey State Law in addressing this motion.

has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor." 167 N.J. at 275.

In Central Motor, the Appellate Division confronted the issue of "whether an indemnitee is entitled to indemnification for legal defense costs associated with defending against its own negligence." Mantilla, 167 N.J. at 270 (citing Central Motor Parts Corp. v. E. I. du Pont de Nemours & Co., 251 N.J. Super. 5, 11 (App. Div. 1991)). The Central Motor Court ruled that "[a] common-law indemnitee, forced to defend claims for which its liability is only vicarious, is entitled not only to the cost of any judgment or reasonable settlement, but also to costs of defense occasioned by the indemnitor's fault." Id. At the same time, the Central Motor Court concluded that New Jersey State Law permits "an indemnitee's recovery of counsel fees 'so long as the indemnitee is free from active wrongdoing regarding the injury to the plaintiff and has tendered the defense to the indemnitor at the start of the litigation.'" Central Motor, 251 N.J. Super. at 11; see Mantilla, 167 N.J. at 273 ("We also adopt the "after-the-fact" approach articulated in *Central Motor,* which permits an indemnitee to recover counsel fees if the indemnitee is adjudicated to be free from active wrongdoing regarding the plaintiff's injury, and has tendered the defense to the indemnitor at the start of the litigation"). "Once it is determined . . . that an indemnitee has defended against . . charges of its independent fault, the indemnitor is not liable for indemnification for those costs." Mantilla, 167 N.J. at 271 (quoting Central Motor, 251 N.J. Super at 12).

In addressing a contractual indemnification provision purported to extend to negligent conduct, the New Jersey Supreme Court adopted a "'bright line' rule requiring 'explicit language' that indemnification and defense shall include the indemnitee's own negligence." Azurak v. Corporate Prop. Investors, 175 N.J. 110, 112 (2003). In so concluding, the Court rejected the

argument that the following indemnification provision extends to negligent conduct:

> Contractor [PBS] shall indemnify, defend and hold harmless each Indemnitee [the Mall] from and against any claim (including any claim brought by employees of Contractor), liability, damage or expense (including attorneys' fees) that such Indemnitee may incur relating to, arising out of or existing by reason of (I) Contractor's performance of this Agreement or the conditions created thereby (including the use, misuse or failure of any equipment used by Contractor or its subcontractors, servants or employees) or (ii) Contractor's breach of this Agreement or the inadequate or improper performance of this Agreement by Contractor or its subcontractors, servants or employees.

That Court accepted the "explicit language as meaning what it sa[id] and conclude[d] that the absence of clear and explicit language addressing indemnification for the Mall's negligence precludes recovery for its portion of the judgment or defense costs." Id. Further,

> [t]o the extent that *Doloughty* distinguishes between 'broad' and 'limited' indemnification clauses and suggests that the former provides a way to include an indemnitee's negligence within an indemnification agreement without explicitly referring to the indemnitee's negligence' or 'fault,' it is no longer good law. It was implicitly overruled by *Ramos* and *Mantilla,* and we reaffirm that view here. Moreover, even if the "broad form" notion retained some vitality, the indemnification provision in this case would not have passed muster.

Id.[4] "Finally, in order to allay even the slightest doubt on the issue of what is required to bring a negligent indemnitee within an indemnification agreement, we reiterate that the agreement must specifically reference the negligence or fault of the indemnitee." Id at 112-13.

---

[4] See Ramos v. Browning Ferris Industries, Inc., 103 N.J. 177 (1986); Mantilla v. Nc Mall Assocs., 167 N.J. 262 (2001); compare Doloughty v. Blanchard Constr. Co., 139 N.J. Super. 110 (Law Div. 1976).

9

In the absence of explicit, unequivocal language to the contrary, the indemnification provisions in the contracts presented to this Court do not extend to negligence, intentional misconduct or fault. Given that the after-the-fact doctrine presumes a right to indemnification, that doctrine is inapplicable with respect to Plaintiff's claim for contractual indemnification. Therefore, Defendant's motion is **granted** on this ground, and Plaintiff's Complaint is dismissed with respect to Count I.

B.   Common Law Indemnification

Citing to Central Motor, Defendant asserts that common law indemnification only arises in cases involving vicarious liability and therefore, is inapplicable in the instant matter where the underlying complaints concern allegations of independent fault. 251 N.J. at 12. Accordingly, Defendant moves to dismiss Count II of Plaintiff's Complaint. By contrast, Plaintiff asserts that the allegations contained in the underlying complaints were either ancillary or derivative to allegations concerning Defendants and, therefore, Plaintiff asserts that the vicarious nature of the underlying allegations requires the application of common law indemnification. Further, to date, Plaintiff represents to the Court that each underlying complaint that has reached a final adjudication on the merits has been resolved in Plaintiff's favor.

"In the absence of an express agreement between them, . . .common-law indemnity[ is] an equitable doctrine that allows a court to shift the cost from one tortfeasor to another." Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 511 (1989). "The right to common-law indemnity arises 'without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'" Id.(citing W. Keeton, D. Dobbs, R. Keeton, & D. Owens, *Prosser & Keeton on The Law of Torts* § 51 at 341 (5th ed. 1984) (*Prosser & Keeton*)). "One branch of common-law indemnity

10

shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable." Id. (citing Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960)). "A corollary to this principle is that one who is primarily at fault may not obtain indemnity from another tortfeasor." Id. (citing Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980)).

"[A] common-law indemnitee, forced to defend claims for which its liability is only vicarious, is entitled not only to the cost of any judgment or reasonable settlement, but also to costs of defense occasioned by the indemnitor's fault." Mantilla, 167 N.J. at 270 (quoting Central Motor, 251 N.J. Super at 9). "[A]n indemnitee who has defended against allegations of its independent fault may not recover its costs." Id. In Mantilla, the New Jersey Supreme Court recognized that "reported cases diverge on the question [of] what it means for a party to defend against allegations of its independent fault, . . . and how to determine whether the party has done so."  167 N.J. at 270 (internal citations omitted).  Although "[s]ome decisions suggest that courts should look to the pleadings to find the answer[,]" the Court held "the better decisions, whose principles we hold shall apply in New Jersey, take an after-the-fact approach and permit an indemnitee's recovery of counsel fees 'so long as the indemnitee is [adjudicated] free from active wrongdoing regarding the injury to the plaintiff and has tendered the defense to the indemnitor at the start of the litigation.'" Id. at 271, 273 (internal citation omitted).

To the extent that Plaintiff's Complaint alleges that Plaintiff has been absolved of liability in the underlying lawsuits and that Plaintiff tendered a defense of indemnification prior to or at the inception of those lawsuits, then the Court cannot conclude that Plaintiff has failed to state a claim for common law indemnification. See Complaint, ¶¶ 14, 15, 19, 20, 21, 35.  Therefore, Defendant's motion is **denied** on this ground.

11

### C. Breach of Duty of Good Faith and Fair Dealing

Defendant moves to dismiss Plaintiff's Complaint with respect to Count III. While both parties recognize that an implied duty of good faith and fair dealing inheres in every contract, Defendant argues that, in the absence of a duty to indemnify, there can be no breach of the implied covenant of good faith and fair dealing.

Plaintiff asserts that "[d]espite Takata's representations to the contrary, Takata has injured USTC's right to receive its contractual benefits and has thereby breached the covenant of good faith and fair dealing." Moreover, Plaintiff contends that "[a]s set forth in USTC's Complaint, the agreement between the parties includes clearly worded, broad indemnification and hold harmless provisions." Further, Plaintiff asserts that "'[G]ood Faith' entails adherence to 'community standards of decency, fairness or reasonableness, and requires a party to refrain from 'destroying or injuring the right of the other party to receive' its contractual benefits." Iliadis v. Wal-Mart Stores, Inc. 191 N.J. 88, 109-10 (2007)(citations omitted).

A breach of the implied covenant of good faith and fair dealing may not arise "absent an express or implied contract." Wade v. Kessler, 172 N.J. 327, 345 (2002). This covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Ass'n Group Life, Inc. v. Catholic War Veterans of the U.S., 61 N.J. 150, 153 (1972). According to the Third Circuit Court of Appeals, the Supreme Court of New Jersey has adopted the Restatement of Contracts explanation that "good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with justified expectations of the other party." Elliot v. Franz, Inc., 457 F.3d 312, 329 (3d

Cir. 2006) (citing R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 275 (2001). Further, "[a] plaintiff may be entitled to relief in an action under the covenant if the defendant acts with ill motives and without any legitimate purpose to destroy the plaintiff's reasonable expectations." Id. (citing Wilson v. Amerada Hess Corp., 168 N.J. 236, 249 (N.J. 2001)). However, "bad motive or intention is essential," and "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." Id. (internal citation omitted). "The covenant should not be construed 'too broadly' as it 'could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'" Id.; see Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 230 (2005).

Plaintiff's Complaint asserts a claim for breach of the duty of good faith and fair dealing owed SGS under the contracts for failure to defend, hold harmless and indemnify Plaintiff in accordance with the provisions of the contract. Plaintiff's claim for breach of the duty of good faith and fair dealing appears to arise from the same contractual provisions presented in support of the purported obligation of contractual indemnification. Given that the Court declines to recognize Plaintiff's claim for contractual indemnification, to the extent Count III arises from the purported contractual obligation to defend and indemnify, this claim cannot proceed. Therefore, on this ground Defendant's motion is **granted,** and Plaintiff's Complaint is dismissed with respect to Count III.

    D.    Promissory Estoppel

Defendant moves to dismiss Count IV of Plaintiff's Complaint for failure to state a claim because Defendant contends that, in the absence of explicit language in the indemnification provision

concerning fraud and intentional misconduct, no promise existed upon which Plaintiff may have reasonably relied. By contrast, Plaintiff contends that the Complaint adequately pleads a claim for promissory estoppel. According to Plaintiff, "[a]s set forth in the Complaint, Takata promised USTC that it would provide them with defense and indemnification from any and all claims arising out of the testing USTC performed."

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington, 194 N.J. 223, 254 (2008) (citing Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003)). Course of conduct does not rise to the level of a clear and definite promise, therefore, a claim for promissory estoppel may not proceed on this theory. Plaintiff's purported claim for promissory estoppel appears to arise from the purported contractual obligation to defend and indemnify. Given that the Court declines to recognize Plaintiff's claim for contractual indemnification, to the extent Count IV arises from the purported contractual obligation to defend and indemnify, this claim cannot proceed. Therefore, on this ground Defendant's motion is **granted,** and Plaintiff's Complaint is dismissed with respect to Count IV.

E.   More Definite Statement

To the extent that Plaintiff's Complaint is permitted to proceed, Defendant moves to compel Plaintiff to provide a more definite statement in accordance with Fed. R. Civ. P. 12(e). In support of this contention, Defendant asserts that Plaintiff failed to attach or plead the complaints containing legal theories for which indemnification is sought as well as the failure to attach or plead the operative

14

decisions of the courts in the underlying litigation. Defendant contends that Plaintiff is required to attach to the Complaint the contracts upon which Plaintiff relies in asserting claims against Defendants.

Plaintiff asserts that in accordance with Fed. R. Civ. P. 8, only a short-and-plain statement containing factual allegations sufficient to "raise a right to relief above the speculative level" is required. Plaintiff contends that a complaint is merely required to establish plausible grounds for recovery.

In terms of the complaints and operative decisions relied upon by Plaintiff, it is unclear to the Court that the allegedly omitted material is inaccessible to Defendant who was also named as a party in many of the underlying suits. It is sufficient for Plaintiff to present a citation to those cases in the Complaint. To the extent that the contracts at issue concern material beyond that which was presented by Defendant pursuant to this motion to dismiss, in accordance with applicable disclosure rules, the discovery phase of this proceeding will result in the production of these materials. Therefore, Defendant's motion for a more definite statement is **denied.**

    F.    Collateral Estoppel/Judicial Estoppel

Plaintiff requests the Court impose collateral/judicial estoppel to bar Defendant's representations to the Court as inconsistent with prior representations in the underlying proceedings. Defendant does not appear to address this argument.

"The doctrine [of collateral estoppel] proceeds on the theory that once a jury makes a finding of ultimate fact, in a fully and fairly tried case, that finding should not be subject to relitigation." State v. Kelly, 201 N.J. 471, 492 (2010). "[T]he term 'res judicata' refers broadly to the common-law

doctrine barring relitigation of claims or issues that have already been adjudicated." Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (citing Velasquez v. Franz, 123 N.J. 498, 505 (1991)). "Collateral estoppel, in particular, represents the 'branch of the broader law of res judicata which bars relitigation of *any issue* which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" Id. (citing Sacharow v. Sacharow, 177 N.J. 62, 76 (2003) (internal citation omitted).

"[J]udicial estoppel[ ] precludes a party from taking a position contrary to the position he has already successfully espoused in the same or prior litigation." McCurrie ex rel. Town of Kearny v. Town of Kearny, 174 N.J. 523, 533 (2002). "[J]udicial estoppel is a doctrine designed to protect the integrity of the judicial process by not permitting a litigant to prevail on an issue and then to seek the reversal of that favorable ruling." Id. (citing Public Safety v. Gonzalez, 142 N.J. 618, 632 (1995).

The Court is compelled to apply the doctrines of collateral estoppel and judicial estoppel in accordance with the law. However, the application of these doctrines is premature. Judgment with respect to the application of collateral estoppel and/or judicial estoppel is **reserved.**

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **granted in part** and **denied in part**. An appropriate Order accompanies this Opinion.

                                        S/ Dennis M. Cavanaugh
                                        Dennis M. Cavanaugh, U.S.D.J.

Dated:       August   3  , 2010
Original:    Clerk
cc:           All Counsel of Record
               Hon. Mark J.A. Dickson, U.S.M.J.
               File