NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SGS U.S. TESTING COMPANY, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 09-CV-6007 (DMC - JAD) |
| TAKATA CORPORATION, TK HOLDINGS, INC., TAKATA, INC., TAKATA RESTRAINT SYSTEMS, INC., TAKATA SEATBELTS, INC., TK-TAITO, LLC, JOHN DOES COMPANIES (1-50) | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Takata Corporation and TK Holdings, Inc. ("Defendants") to strike SGS U.S. Testing Company, Inc.'s ("Plaintiff") amended complaint pursuant to Fed. R. Civ. P. 15(a) and 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. Upon careful consideration of the parties' submissions, for the reasons herein expressed, it is the decision of this Court that Defendants' motion is **granted.**

### I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff SGS-USTC is a company that does safety testing for the automotive industry, and Defendant Takata is a manufacturer of seatbelts. SGS-USTC has performed testing for Takata since 1985. In 2002 a series of seven lawsuits were filed against Takata; in five of them, SGS-USTC was named as a party defendant, and accused of negligent testing and conspiring with Defendant to hide

alleged defects in the series TK-52 seatbelts. These suits included both class actions claiming that the value of cars had been diminished because of faulty seatbelts, and personal injury claims arising from allegedly defective seatbelts. Four of the cases in which SGS-USTC was named have been resolved to date. In two of the cases, the complaint against SGS-USTC was dismissed. In a third case, SGS-USTC was granted summary judgment, and in the fourth, judgment was entered in favor of all defendants. It appears that the fifth case is still pending. In at least two separate actions, SGS-USTC was not named as a defendant, but nonetheless allegedly incurred litigation expenses as a consequence of the allegations in those complaints. There have been no findings of wrongdoing or negligence on the part of SGS-USTC.

The parties signed various contracts containing indemnification provisions and other terms and conditions starting in 1986. Plaintiff styles this amended complaint as a breach of contract claim in contrast to its original complaint in an apparent effort to avoid the deficiencies the Court found in dismissing Plaintiff's original claims for contractual indemnification. In the Court's Opinion of August 3, 2010, Counts I (contract indemnification), III (breach of duty of good faith and fair dealing) and IV (promissory estoppel) of Plaintiff's complaint were dismissed pursuant to Fed. R. Civ. P. 12(b)(6), leaving only Count II, common law indemnification. The Court denied Plaintiff's motion for reconsideration on November 17, 2010. On November 15, 2010 Magistrate Judge Dickson allowed Plaintiff to make a motion to amend their compliant on or before January 7, 2011. Without leave of Court, Plaintiff filed the amended complaint which is the subject of the instant motion on December 28, 2010.

## II. STANDARD OF REVIEW

Fed. R. Civ.P. 15(a)(2) states in relevant part that "in all other cases, a party may

2

amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Supreme Court has identified several factors to be considered when applying Rule 15(a): "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In our circuit, this has been further analyzed, and "we have interpreted these factors to mean that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp*. 1 F.3d 1406, 1414 (C.A.3 (Pa.),1993), citing *Cornell & Co. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978). Moreover, "futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted." *Smiley v. Daimler Chrysler* 538 F.Supp.2d 711, 715 (D.Del.,2008) *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Additionally, if the proposed amendment 'is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.'" *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 469 (D.N.J.1990).

### III. DISCUSSION

The gravaman of this law suit is a claim for attorney's fees and expenses incurred by Plaintiff as a result of having to defend in several law suits related to allegedly defective seatbelts manufactured by Defendant. Because legal fees are at issue, any litigation that unnecessarily serves to increase those fees would be exacerbating rather than remedying the situation, something which the Court seeks to avoid. With that in mind, the Court must consider whether the amended complaint submitted by Plaintiff merely rehashes arguments that have already been addressed in dispositive motions before the Court. Also, the Court must consider whether the amended complaint is ultimately futile because all it attempts to do is make an end run around the Court's ruling that Defendant was not contractually obligated to indemnify Plaintiff for the costs of defense in the above mentioned actions. Although the amendment styles the complaint as a breach of contract action, the Court finds that this is a distinction without a difference. The contractual indemnification count which the Court dismissed on August 3, 2010 was also based on a breach of contract theory, albeit a breach of a different provision of the contract. Here, Defendant correctly points out that Plaintiff places all of its reliance on catch-all, boiler plate language which is essentially meaningless as written, stating that Defendant was not allowed to use the results of Plaintiff's testing "for any purpose." Moreover, and most importantly, the language which Plaintiff refers the Court to is not consistent over the course of the relationship between the parties, and was completely altered by the time of the 2000 agreement. Perhaps most

critically, however, even if the Court were to find that the early versions of the contract that contain the "for any purpose" language are controlling, and even if the statute of limitations were not an insurmountable problem for Plaintiff, there is no evidence that Defendant ever violated the terms and conditions on which Plaintiffs rely. In the First Amended Complaint in one of the underlying cases, *Zavala v. Takata* BC 277327 (Superior Court of Los Angeles County, 2006), for example, it was alleged that "all automobile manufacturers rely on Takata to confirm that the TK-52 series buckles comply with FMVSS209." (Defendant's Motion to Dismiss, ECF Doc. 3-7, Exhibit C, ¶10). The alleged defect in the buckle was not discovered because Takata supplied SGS-USTC testing results to auto manufacturers, or because, as alleged, SGS-USTC conspired with Takata to falsify testing results that were then given to automobile manufacturers with the consent of SGS-USTC, but rather because a former Honda engineer reported that, "during a crash test of a Honda Accord equipped with a Takata TK-52 series buckle, the buckle disengaged upon vehicle impact." (Id at ¶ 12) The *Zavala* complaint alleges that it is the responsibility of vehicle manufacturers to "self- certify that its vehicles pass all applicable standards," which explains why Honda was conducting independent crash tests, and not relying on Takata or SGS-USTC to insure its compliance. Moreover, and most tellingly, the *Zavala* complaint states that when SGS-USTC allegedly altered the testing standards so that Takata's seatbelts would appear to be compliant, "the only record of this 'standard' appears in the actual compliance reports issued by SGS -USTC, which are not sent to NHTSA (National Highway Traffic Safety Administration) or made available to the public." (¶ 29) In other words, the only culpable conduct SGS-USTC is alleged to have engaged in was either as a result of Takata's failure to share its reports, or its collusion with Plaintiff in selectively sharing reports that were inaccurate. Neither of these

allegations suggest that Takata violated the terms and conditions of the contracts it signed with SGS-USTC by using reports without permission. Moreover, as Defendant correctly points out, those contracts changed over the course of the business relationship between Plaintiff and Defendant. In 1996, the contract language cited by Plaintiff had already been modified such that "SGS USTC reports are for the exclusive use of the Client to whom they are addressed and the name SGS U.S.Testing and the name SGS U.S. Testing Inc. or its seals and insignia, are not to be used by or on behalf of clients under any circumstances or for any purpose whatsoever, including but not limited to use in advertising, publicity material or in any other manner without SGS USTC's prior written approval." The very next term states "any use by Client of SGS USTC's Reports or the information contained therein is conditional upon timely payment of all fees," a term that suggests a rationale for the previous term that Plaintiff does not address. (Plaintiff's Opposition to Motion to Dismiss, ECF Doc. 5-4, 1996 contract, ¶ 8 and 9). By 1996 it was already clear that the contract enjoined Defendant from using Plaintiff's name, insignia and seals, but not the reports themselves, or the results contained therein. Presumably, a report prepared solely for the edification of Defendant with no practical application in terms of its ability to warranty its seatbelts would be useless, and would, as Defendant suggests, deny Defendant any benefit of its bargain with Plaintiff. Moreover, by the 2000 version of the contract, the language had been significantly altered, and stated only that "the name, seals, marks or insignia of SGS U.S.Testing Company, Inc. may not be used in any advertising or promotional activity without the prior written approval of the Company." In the next paragraph the contract states that "subject to the Client's instructions as accepted by the Company, the Company will issue reports which reflect results of testing made with due care within the limitation of instructions (ECF Doc. 5-4, ¶

5 and 6) received but the Company is under no obligation to refer to or report upon any facts or circumstances which are outside the specific instructions received." This strongly suggests that by 2000, the provision that Plaintiff points to, and the "for any purpose" language on which it relies, had already been abandoned by Plaintiff, and Plaintiff had instead shifted its focus to insuring that their test results would not be interpreted too broadly, or used to prove aspects of the seatbelt's safety that had not been tested under the contract. The Court finds it reasonable to infer that this was always the purpose of the contractual language, and that as the contract evolved over the years, and the drafting became more focused and precise, the real purpose of the limitation on using SGS-USTC"s name, logo or mark in reports that Defendant shared became apparent. Plaintiff clearly wished to protect itself from the possibility that third parties would think that they had given their stamp of approval on Defendant's products when, in fact, their role was more limited. Plaintiff's preferred inference, that their reports were never meant to be used by Defendant for any purpose, strains credulity, and is not borne out by the language which clearly limits the use of Plaintiff's name, but not the use of reports themselves that, once delivered and paid for, became the property of Defendant.

      The Court does not find that Plaintiff acted in bad faith, or with undue delay in amending their complaint, although the "terms and conditions" on which they seek to amend were part of the contract that the original complaint was based on, and was surely available for Plaintiff to analyze at the earliest point in this litigation. Although the Court does not decide on this ground, it should be noted that where, as here, "most of the facts were available to plaintiff" from the beginning of litigation, that weighs against granting leave to amend. *Lorenz v. CSX Corp.* 1 F.3d 1406, 1414 (C.A.3 (Pa.),1993) It is peculiar that Plaintiff only came forward with this novel

amendment after their contract claims were dismissed twice. Its presentation of this new contractual theory as if it were a Eureka! moment seems disingenuous, but the Court does not find bad faith in the attempt. The Court does find, however, that the dual factors of prejudice to the opposing party and futility weigh in favor of striking Plaintiff's amended complaint. As previously stated, this is a dispute about legal fees, and every motion only enlarges the scope of the litigation. The Court would prefer to be part of the solution, rather than part of the problem. Plaintiff has failed to document in even the most rudimentary way its claim that Defendant either violated the terms and conditions relating to use of the testing reports, or that the terms and conditions conform to Plaintiff's interpretation of them. Plaintiff is, and has been since the beginning of this law suit, seeking payment for its costs of defense. Plaintiff has not shown, however, that the contractual violation of which they complain, the presumptively unauthorized sharing by Defendant of Plaintiff's testing reports with automobile manufacturers, is causally related to the cases in which Plaintiff was forced to appear as a party defendant, or the other cases in which Plaintiff was compelled to defend. Thus, even if Plaintiff were correct that Defendant had breached the letter of the contractual terms, it can point to no defense costs related to that breach. To the extent that defense costs were incurred as the result of a breach of contract, those costs could only relate to a contractual indemnification provision which the Court already found lacking. Without the existence of an enforceable indemnification clause, and without a causal relationship between the breach and the defense costs incurred, there is no basis on which the Court can grant relief. None of the complaints in the underlying actions allege that Defendant improperly revealed testing results to automobile manufacturers. As previously stated, they allege the opposite, that Plaintiff withheld information or did inadequate testing at Defendant's behest,

and allowed Defendant to share reports which they knew to be inaccurate. The costs of defense that Plaintiff incurred were not related to any actual or imagined unauthorized sharing on the part of Defendant. Since Plaintiff never had to defend against that breach, it is not related to a suit for cost of defense. If Plaintiff could prove unauthorized sharing, and could demonstrate how they were harmed, perhaps a Court could fashion a remedy, but in this situation the alleged breach and the alleged harm are apples and oranges, factually and causally unrelated.. As such, the Court finds that allowing Plaintiff to proceed with the complaint as amended would be both futile and counter-productive.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to strike Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 15(a) and Fed. R. Civ. P. 12(b)(6)is **granted.** An appropriate order follows this opinion.

   S/ Dennis M. Cavanaugh
   DENNIS M. CAVANAUGH, U.S.D.J.

Date:  May  4 , 2011

cc: Counsel of Record
    Hon. Joseph A. Dickson, U.S.M.J.