NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SGS U.S. TESTING COMPANY, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 09-cv-6007 (DMC)(MF) |
| TAKATA CORPORATION and TK HOLDINGS, INC., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Defendants Takata Corporation and TK Holdings, Inc. (collectively, "Takata" or "Defendants") for Summary Judgment, and upon the Motion of Plaintiff SGS U.S. Testing Company, Inc. ("SGS" or "Plaintiff") for Summary Judgment. ECF Nos. 75, 76. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion is **granted** and that Plaintiff's Motion is **denied**.

**I.     BACKGROUND**

This indemnification action concerns a series of lawsuits relating to the production and safety testing of automotive seat belts. SGS performs independent testing on automotive restraint systems

to verify compliance with Federal Motor Safety Standard ("FMVSS") 209.[1]  Defs.' Statement of Material Facts ("Defs.' Statement") ¶ 1, ECF No. 75-32; Pl.'s Response to Material Facts ("Pl.'s Response") ¶ 1, ECF No. 81-1.  Takata manufactures and sells seatbelts to automobile manufacturers.  The primary issues in these Motions concern the manner in which SGS performs tests for Takata, the business relationship between Takata and SGS, and the parties' litigation strategies in certain underlying lawsuits.

Since 1985, SGS has performed periodic FMVSS 209 seat belt buckle testing for Takata.  Pl.'s Statement of Material Facts ("Pl.'s Statement") ¶ 3, ECF No. 76-1; Defs.' Response to Material Facts ("Defs.' Response") ¶ 3, ECF No. 80.  A series of contracts between the parties governed their business relationship.  Pursuant to these contractual arrangements, SGS did not test every seatbelt that Takata manufactured; rather, SGS performed what it calls "sample" or "snapshot" testing.  Pl.'s Statement ¶¶ 5, 6; Defs.' Response ¶ 5.  One part of the FMVSS 209 testing is referred to as "partial engagement testing."  Pl.'s Statement ¶ 12; Defs.' Response ¶ 12.  A technician performing partial engagement testing would insert the "tongue end" of a Takata seat belt buckle into the "receptacle end" to achieve partial engagement, also known as a "false latch."  Pl.'s Statement ¶ 13; Defs.' Response ¶ 13.  If the technician achieved partial engagement, he or she would use a force gauge to measure the pounds of force necessary to pull the buckle apart.  Pl.'s Statement ¶ 14; Defs.' Response ¶ 14.  If, however, the seat belt did not partially engage, the technician could not measure the force necessary to separate the belt tongue and receptacle end, and the test was complete.  Pl.'s Statement ¶ 15; Defs.' Response ¶ 15.  In certain instances when the seat belt did not partially

---

[1] References to SGS include its predecessor, United States Testing Company, Inc. ("USTC").

engage, the technician would indicate "N.A." or ".5 lbs" on testing forms, to show either that the test was not applicable, or that only a nominal amount of force was required to achieve separation. Pl.'s Statement ¶ 16; Defs.' Response ¶ 16. SGS alleges that conflicting testimony concerning these instances "exposed SGS to bear the expense of several lawsuits." Pl.'s Mot. Br. 27, ECF No. 76-3.

In 1996, an SGS employee named Frank Pepe ("Pepe") gave a deposition in Chastain v. General Motors. Defs.' Statement ¶ 2; Pl.'s Response ¶ 2. Pepe testified that if partial engagement was not achieved, he would write "not applicable" on the data sheet, and that if it did occur, he or the technician testing would measure the release force required. Defs.' Statement ¶ 3; Pl.'s Response ¶ 3. In regards to one specific instance of testing, Pepe stated that it was "fair to say" that a technician was not able to obtain a partial engagement since he did not write "not applicable," but rather noted a release force of .5 lbs. Defs.' Statement ¶ 4; Pl.'s Response ¶ 4.

In 2000 and 2001, an SGS employee named Frank Savino ("Savino") gave a deposition and signed two affidavits in Castro v. Mazda Motor of America Inc., et al.. Defs.' Statement ¶ 5; Pl.'s Response ¶ 5. Savino testified that SGS considered the partial engagement test to be "not applicable" to certain "ejector spring buckles," and stopped testing those ejector spring buckles for partial engagement in the early 1990's Defs.' Statement ¶ 6; Pl.'s Response ¶ 6. Savino further testified that the National Highway Traffic Safety Administration ("NHTSA") would not allow SGS to write "not applicable" on the data sheet, so SGS would instead write a nominal value of .5 lbs on the data sheet. Defs.' Statement ¶ 6; Pl.'s Response ¶ 6. Savino went on to state that if Pepe said that if the .5 lbs figure meant there was a partial engagement and that it took .5 lbs of force to separate the parts, then Pepe was wrong. Defs.' Statement ¶ 7; Pl.'s Response ¶ 7.

Following the testimony of Pepe and Savino in Chastain and Castro, various plaintiffs filed

the following lawsuits underlying SGS's indemnification claims:

> Fernandez v. Takata Corp, SGS U.S. Testing Company Inc., et al., Superior Court of Arizona, County of Maricopa, Case No. CV 2002-022227 ("Fernandez")
>
> Lohman v. Takata Corp., SGS U.S. Testing Company Inc., et al., 1st Judicial District Court, County of Santa Fe, New Mexico, Case No. D-0101-CV-200201279 ("Lohman")
>
> Zavala v. Takata Corp., United States Testing Company, Inc., et al., Superior Court of California, County of Los Angeles, Case No. BC 277327 ("Zavala")
>
> Baggett d/b/a American Motors v. Takata Corp., SGS U.S. Testing Company, Inc., et al., Circuit Court for the State of Tennessee, 28th Judicial District, Haywood County, Case No. 3594 ("Baggett")
>
> Price v. Takata Corp, U.S. Testing Company, Inc., et al, United States District Court, Northern District of Texas, Amarillo Division, Case No. 2:08-CV-151-J ("Price")
>
> Everett v. TK-Taito, LLC, Takata Seat Belts, Inc., 30th Judicial District Court of Wichita County, Texas, Case No. 157,896A ("Everett")
>
> Stevic v. Nissan Motor Co., Ltd., TK Holdings, Inc. aka Takata Seat Belts, Inc., et al., Ninth Judicial Circuit in Orange County, Florida, Case No. 06-CA-8631 ("Stevic")

Pl.'s Statement ¶ 50; Defs.' Response ¶ 50. SGS asserts the cases were based on allegations that Takata's TK-52 seatbelts were defective, and that SGS's alleged liability for failure to perform FMVSS 209 testing in those cases was only ancillary. Pl.'s Statement ¶¶ 50-63. SGS further asserts that their presence in those lawsuits was caused by Takata's alleged "misuse of SGS confidential snapshot testing reports," and by Takata's revelations of this information while defending prior lawsuits. Pl.'s Mot. Br. 22. Takata maintains, however, that the primary theory driving each of the underlying cases was that SGS "skipped a test," and that SGS and Takata failed to disclose this fact to consumers. Defs.' Response ¶ 50. Takata therefore asserts SGS's presence in those lawsuits was occasioned by allegations of its own independent fault.

Both Takata and SGS prevailed with defense verdicts in Zavala, and prevailed in each of the other underlying actions either through voluntary dismissal or by a court finding that they were not liable. Defs.' Statement ¶¶ 45, 46; Pl.'s Response ¶¶ 45, 46. Plaintiff SGS filed the present lawsuit on November 24, 2009, demanding common law indemnification from Takata for any and all attorneys' fees, litigation expenses, and other costs of suit related to SGS's involvement. Compl. ¶¶ 33-36, ECF No. 1.[2]

Defendants filed their Motion for Summary Judgment on December 29, 2011. Plaintiff filed Opposition to Defendants' Motion on February 6, 2012. ECF No. 81. Defendants filed a Reply on February 13, 2012. ECF No. 83. Plaintiff filed its own Motion for Summary Judgment on January 2, 2012. Defendants filed Opposition to Plaintiff's Motion on February 6, 2012. ECF No. 79. Plaintiff filed a Reply on February 13, 2012. ECF No. 82. The Matter is now before this Court.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may

---

[2] This Court entered an Opinion and Order on August 3, 2010, dismissing all of Plaintiff's causes of action except for the common law indemnity claim. ECF Nos. 14, 15.

not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**III.   DISCUSSION**

Both parties have moved for summary judgment on the sole remaining count in the complaint, which seeks common law indemnity. "[C]ommon-law indemnity [is] an equitable doctrine that allows a court to shift the cost from one tortfeasor to another." Promaulayko v. Johns Manville Sales Corp., 562 A.2d 202, 205 (N.J. 1989). "The right to common-law indemnity arises 'without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'" Id. (citing W. KEETON, D. DOBBS, R. KEETON, & D. OWENS, PROSSER & KEETON ON THE LAW OF TORTS § 51 at 341 (5th ed. 1984).

Application of New Jersey's law of indemnification is often a troublesome task. New Jersey law creates a right to indemnification in two situations: (1) explicitly by contract; or (2) when a special relationship between the parties demonstrates that indemnification should be implied. Allied

Corp. v. Frola, No. 87–462, 1993 WL 388970 at *10 (D.N.J. Sept. 21, 1993). "In either instance, however, a party is entitled to indemnification only if it demonstrates that it is free of fault and its liability is purely constructive, secondary or vicarious." Id. (citing Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Staiman, 771 F.Supp. 102, 105 (M.D.Pa.1991); Ramos v. Browning Ferris Indus., Inc., 510 A.2d 1152, 1158 (N.J. 1986)). As for the special relationship requirement, while "the case law is not exhaustive, examples of special relationships are: principal-agent, employer-employee, lessor-lessee, and bailor-bailee." In re Tarragon Corp., No. 2010 WL 3928496 at *5 (Bankr. D.N.J. Oct. 1, 2010) (citing Ramos, 510 A.2d at 1158). Further, certain New Jersey case law indicates that a right to indemnification may be implied in the absence of a specific contractual agreement, and even when a special relationship is not present between the parties, where one party is entirely free of fault. See Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159 A.2d 97 (N.J. 1960) (focusing on statutory imposition of absolute liability on airplane owner while finding owner factually free from fault). Later New Jersey decisions have indicated that to the extent that this case law recognizes an indemnity claim in the absence of a special relationship, it "illustrates the proposition that it is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." Ramos, 510 A.2d at 1158 (internal citations and quotation marks omitted).

  A party forced to defend claims for which its liability is only vicarious is entitled both to the cost of the judgment and to the costs of defense occasioned by the indemnitor's fault. Mantilla v. NC Mall Associates 770 A.2d 1144, 1149 (N.J. 2001) (quoting Central Motor Parts Corp. v. E.I. duPont deNemours & Co., Inc., 596 A.2d 759, 761 (N.J. Super Ct. App. Div. 1991)). A finding of vicarious liability is important, however, as "an indemnitee who has defended against allegations of its independent fault may not recover its costs." Id. In Mantilla, the New Jersey Supreme Court

recognized that "reported cases diverge on the question [of] what it means for a party to defend against allegations of its independent fault, . . . and how to determine whether the party has done so." 770 A.2d at 1149 (internal citations omitted).  Although "[s]ome decisions suggest that courts should look to the pleadings to find the answer[,]" the Court held "the better decisions, whose principles we hold shall apply in New Jersey, take an after-the-fact approach and permit an indemnitee's recovery of counsel fees 'so long as the indemnitee is [adjudicated] free from active wrongdoing regarding the injury to the plaintiff and has tendered the defense to the indemnitor at the start of the litigation.'"  Id. at 1149-50 (internal citation omitted).

   The parties agree that the relationship between SGS and Takata does not fall within one of the four commonly cited examples of special relationships that would confer a right of common law indemnity.  Takata relies on Savino's description of SGS as "an independent testing company," and states that SGS is an independent company "that, for a price, performs testing to verify a product's compliance with FMVSS 209.  That is the relationship between SGS and the Takata Defendants, nothing less, nothing more."  Defs.' Mot. Br. 19, ECF No. 75-33.  Takata further relies upon admonitions of New Jersey case law that implied indemnification is a "narrow doctrine" that excludes many business relationships from coverage, such as vendor-vendee relationships.  Defs.' Opp'n Br. 19 (citing Robinson v. Rheon Automatic Machinery Co., LTD, No. 10-1916, 2011 WL 832241, at *2 (D.N.J. March 3, 2011)). Takata therefore relies heavily on the description of SGS as an "independent testing company," and asserts that the relationship between Takata and SGS does not rise to the level of a "special relationship" for indemnity purposes.

   SGS, meanwhile reminds the Court that "the application of common law indemnification is context-sensitive and the absence of a special legal relationship is not necessarily dispositive." Pl.'s

Opp'n Br. 10 (citing In re Tarragon Corp., 2010 WL 3928496 at *10, n.9) (emphasis in original). SGS goes on to assert that the special relationship in this case derives from the parties' "longstanding business relationship that [has] developed during more than thirty (30) years." Pl.'s Opp'n Br. 10 (internal quotations omitted). SGS contends that this special relationship arises from the numerous contracts between the parties, and is evidenced by Takata's reliance on SGS employees such as Savino in its own legal defense. Pl.'s Opp'n Br. 10-12.

      Neither party's argument on this issue is particularly compelling; an understandable result considering that nebulous set of rules governing this type of action. Both parties rely heavily on descriptions of the other as either an "independent testing company," or one that has reaped the rewards of a "longstanding business relationship." SGS's position takes a more detailed view of the particular facts of this case, as shown by its discussion of Takata's use of Savino and other SGS employees for its legal defense. The Court is mindful, however, that implied indemnification by way of a special relationship is a "narrow doctrine" that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee. See, e.g., Allied Corp. v. Frola, 730 F.Supp. 626, 639 (D.N.J. 1990) (refusing to recognize special relationship where no lessor-lessee relationship existed in fact) (abrogated on other grounds).

      In truth, the actual relationship between SGS and Takata appears closer to the vendor-vendee relationship rejected by the courts of New Jersey than to any of the four commonly accepted relationships. SGS provided a service to Takata, and Takata paid SGS for this service. The fact that the parties engaged in this activity over a number of years does not change the fundamental structure of this relationship. Nor is the Court convinced that Takata's use of Savino and other SGS employees in litigation evidences a special relationship. As Takata points out, Savino was a logical

choice for his testimony, since he is the "lab manager who directly supervises the technicians who perform the testing, and who prepares the test reports for SGS's clients." Defs.' Reply Br. 4 (internal quotation marks omitted). Further, while SGS argues Savino's decision not to involve SGS's in-house counsel with his deposition testimony indicates the closeness of the parties, Takata correctly points to Savino's own testimony stating that in-house counsel "knew nothing about seat belt testing," thus sufficiently explaining Savino's decision. Defs.' Reply Br. 5. SGS has therefore not demonstrated that the relationship between the parties is a sufficiently "special relationship" to fit within the narrow bounds of implied indemnity.

As SGS has indicated, however, the lack of a special relationship does not end this Court's inquiry. As noted above, in certain circumstances New Jersey courts will imply a right to indemnification between parties who do not share a special relationship where the indemnitee is entirely free of fault. The lone cases cited to by SGS for this proposition, however, contains markedly different facts. In Alder's Quality Bakery, Inc. v. Gaseteria, Inc., the Supreme Court of New Jersey permitted the owner of an airplane that crashed into a television tower to maintain an indemnity claim against the party in possession of the tower. 159 A.2d at 109. Rather than focus on the absence of a special relationship between the indemnitor and the indemnitee, the Court's Opinion instead considered the imposition of absolute liability on the airplane owner, and held "if the aircraft owner is able to demonstrate that he is free of fault, and that the strict liability imposed by N.J.S.A. 6:2-7 is merely an imputed or constructive fault, then a showing of another's sole responsibility for the losses will entitle the aircraft owner to indemnity from the person who actually caused the injuries originally complained of." Id. In this matter, SGS did not face allegations premised on absolute or strict liability. Further, there was no showing of Takata's "sole

responsibility for the losses," as neither party was found to be at fault in any of the underlying actions. Accordingly, the Court will not apply the holding of Alder to the circumstances of this case, and will therefore not permit SGS to pursue an action for indemnification in the absence of a special relationship.

Although not stated as such, SGS appears to advance an alternative theory of liability throughout its papers. In addition to the suggestion that Takata is liable to SGS based on cases filed against the parties for defective manufacturing, SGS also discusses an argument that Takata's alleged misuse of confidential information exposed SGS to potential liability in the underlying lawsuits. Pl.'s Mot. Br. 22-23. There are two problems with this theory. First, this Court has rejected the notion that Plaintiff's reports "were never meant to be used by Defendant for any purpose" as an argument that "strains credulity." May 4, 2011 Opinion 7, ECF No. 57. Accordingly, the suggestion that Takata was the primary defendant because its use of those reports exposed SGS to liability also strains credulity. A second problem with this theory is that it is based on Takata's alleged liability to SGS, and not to the original plaintiffs. This District has already considered and rejected such a proposition. See Joint Meeting of Essex and Union Counties v. Parsons Engineering-Science, Inc., No. 02-5116, 2005 WL 2416979, at *6 (D.N.J. Sept. 29, 2005) (agreeing with assertion that "claims for indemnification are sustainable based on a third-party defendant's liability to the original plaintiff, not to the third-party plaintiff, regardless of the theory of liability asserted against it."). SGS's arguments on this front suffer from the same problems as their arguments on the special relationship: permitting SGS to recover for indemnification on such a theory would stretch the narrow doctrine of implied indemnity beyond its intended borders. Accordingly, SGS is not entitled to indemnification from Takata.

IV.     **CONCLUSION**

For the foregoing reasons, Takata's Motion for Summary Judgment is **granted**, and SGS's Motion for Summary Judgment is **denied**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       July  24 , 2012
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File